25-1634

---

**UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

---

CNS INTERNATIONAL MINISTRIES, INC.,
*Plaintiff-Appellant,*

v.

JESSICA BAX, *in her official capacity as Acting Director of the Missouri
Department of Social Services*,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Missouri, Hon. Henry E. Autrey

---

**APPELLANT'S OPENING BRIEF**

---

Timothy Belz
J. Matthew Belz
CLAYTON PLAZA LAW GROUP, L.C.
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellant CNS
International Ministries, Inc.*

## SUMMARY OF THE CASE

In its understandable zeal to protect children, Missouri has adopted laws that overburden Plaintiff's constitutional and statutory rights, especially its expressive association rights under the First Amendment and its procedural due process rights under the Fourteenth. As an expressive association, Plaintiff, not the State, has the right to choose the members of its own community. In addition, Defendant cannot impair such rights, which belong to Plaintiff and its members, without affording them due process. Defendant flunks the ensuing strict scrutiny test, because it cannot demonstrate that it is employing narrowly-tailored means to achieve a compelling governmental interest in impairing these rights.

On July 14, 2021, Missouri imposed various new and overexpansive background check, disclosure and employment disqualification rules on residential care facilities, including "License-Exempt Residential Care Facilities" or "LERCFs," one of which is part of Plaintiff's community. The State has already applied its new laws to exclude two longstanding members of Plaintiff's LERCF who have no history of problems with children. The State has also excluded Plaintiff from its list of approved LERCFs because of non-compliance with unconstitutional requirements. Plaintiff's injuries from the new statutory scheme are thus real—not hypothetical.

Appellant respectfully requests 15 minutes of oral argument.

**CORPORATE DISCLOSURE STATEMENT**

No parent corporation nor any publicly held corporation owns 10% or more of the stock of CNS International Ministries, Inc.

## TABLE OF CONTENTS

Summary of the Case ........................................................................  i

Corporate Disclosure Statement ........................................................ ii

Table of Authorities ........................................................................ vi

Jurisdictional Statement .................................................................. 1

Statement of the Issues Presented for Review ..................................... 2

Statement of the Case ..................................................................... 5

    A. The Parties .......................................................................... 5

    B. Heartland is an Intentional Community ................................... 5

    C. Heartland is a Safe Community .............................................. 7

    D. The Residential Care Facility Notification Act ......................... 8

        1. Definition of "residential care facility" ............................... 8

        2. Compelled Notification Procedures ................................... 9

        3. Required Background Checks ........................................... 10

        4. Due Process Issues ....................................................... 12

            a. Claims of Abuse or Neglect ...................................... 12

            b. Background Check Ineligibility ................................... 14

    E. CNSIMI's Association Rights are Already Burdened .................. 14

Summary of the Argument ................................................................ 16

Standard of Review ........................................................................ 18

Argument ..................................................................................... 19

I.   THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT
     THE RCFNA'S EMPLOYMENT SCREENING AND ELIGIBILITY
     REQUIREMENTS VIOLATE CNSIMI'S EXPRESSIVE ASSOCIATION
     RIGHTS BY DENYING ITS RIGHT TO DEFINE ITS STAFF ............  19

     A. The RCFNA's Screening Background Check and Eligibility
        Requirements Disqualify Attorneys, Accountants and Other
        Contractors, Along With Others Who Never Have Unsupervised Access
        to Children ............................................................................  20

     B. The RCFNA's Screening and Eligibility Requirements Burden
        Expressive Association ........................................................  27

     C. The Challenged Sections of the RCFNA Cannot Pass Strict
        Scrutiny ...............................................................................  29

II.  THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT
     THE RCFNA VIOLATES PLAINTIFF'S PROCEDURAL DUE
     PROCESS RIGHTS BY DISQUALIFYING INDIVIDUALS
     WITHOUT MEANINGFUL PRE-DEPRIVATION OR POST-
     DEPRIVATION PROCESS ...................................................  34

     A. RCFNA's Exclusion Determinations Do Not Provide Due
        Process ................................................................................  34

     B. RCFNA's Post-Deprivation Appeal Provisions are Also
        Insufficient .........................................................................  38

III. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT
     THE RCFNA VIOLATES PLAINTIFF'S PROCEDURAL DUE
     PROCESS RIGHTS BY PROVIDING FOR THE REMOVAL OF
     STUDENTS FROM HEARTLAND REGARDLESS OF
     ESTABLISHED STANDARDS ...........................................  42

IV.  THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT
     THE RCFNA UNCONSTITUTIONALLY DEPRIVES PARENTS
     OF THE RIGHT TO SELECT THEIR CHILDREN'S SCHOOL ..........  46

V.    THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT
      THE RCFNA VIOLATES CNSIMI'S RIGHT TO RELIGIOUS
      AUTONOMY BY RESTRICTING WHO IT CAN HIRE AS
      RELIGIOUS INSTRUCTORS .................................................  49

VI.   THE DISTRICT COURT ERRED IN HOLDING THAT THE
      RCFNA'S DEFINITION OF "RESIDENTIAL CARE FACILITY"
      EXCLUDES CNSIMI'S ADULT RECOVERY PROGRAMS AND
      OTHER MINISTRIES ..........................................................  51

Conclusion ..........................................................................................  54

Certificate of Filing and Service ........................................................  55

Certificate of Compliance ..................................................................  56

# TABLE OF AUTHORITIES

Page(s)

Cases

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ................................................................. 3, 46

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000) ................................................................. 2, 30

*Bryant v. Woodall,*
1 F.4th 280 (4th Cir. 2021) .......................................................... 46

*Burson v. Freeman,*
504 U.S. 191 (1992) ...................................................................... 30

*Cannata v. Catholic Diocese of Austin,*
700 F.3d 169 (5th Cir. 2012).......................................................... 50

*Derousse v. State Farm Mut. Auto. Ins. Co.,*
298 S.W.3d 891 (Mo. 2009) ........................................................... 26

*Flores-Figueroa v. U.S.,*
556 U.S. 646 (2009) ...................................................................... 26

*Frisby v. Schultz,*
487 U.S. 474 (1988) ...................................................................... 32

*Gallardo By & Through Vassallo v. Marstiller,*
596 U.S. 420 (2022) ...................................................................... 23

*Gilkerson v. Nebraska Colocation Centers, LLC,*
859 F.3d 1115 (8th Cir. 2017).......................................................... 18

*Ginalski v. Diocese of Gary,*
2016 WL 7100558 (Dec. 5, 2016) .................................................... 50

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006) ...................................................................... 31

*Hart v. Commissioner,*
   730 F.2d 1206 (8th Cir. 1984) .............................................................. 28

*Heartland Acad. Cmty. Church v. Waddle,*
   427 F.3d 525 (8th Cir. 2005) .................................................... 2, 3, 27

*Heartland Academy Community Church v. Waddle,*
   317 F. Supp. 2d 984 (E.D. Mo. 2004) ................................. 3, 43, 44, 48

*Hedges v. Obama,*
   724 F.3d 170 (2d Cir. 2013) .................................................................. 46

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.,*
   565 U.S. 171 (2012) ................................................................... 4, 49, 50

*Jamison v. Dept. of Soc. Servs.,*
   218 S.W.3d 399 (Mo. 2007) ..................................................... 2, 38, 39

*Little v. Wuerl,*
   929 F.2d 944 (3d Cir. 1991) .................................................................. 50

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) .............................................................................. 45

*NAACP v. Ala. ex rel. Patterson,*
   357 U.S. 449 (1958) .............................................................................. 19

*New Hampshire Right to Life Political Action Comm. v. Gardner,*
   99 F.3d 8 (1st Cir. 1996) ....................................................................... 46

*NLRB v. Catholic Bishop of Chicago,*
   440 U.S. 490 (1979) .............................................................................. 50

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
   140 S. Ct. 2049 (2020) .................................................................... 4, 49

*Parktown Imports, Inc. v. Audi of Am., Inc.,*
   278 S.W.3d 670 (Mo. 2009) .................................................................. 22

*Pierce v. Society of Sisters,*
   268 U.S. 510 (1925) ................................................................... 3, 46, 47

*Riley v. National Federation of Blind of N. C., Inc.*,
    487 U.S. 781 (1988) ........................................................................ 33

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ............................................................... 2, 19, 30

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ........................................................................ 19

*Smith v. St. Louis Cnty. Police*,
    659 S.W.3d 895 (Mo. 2023) ...................................................... 22, 24

*St. Charles Cnty. v. Dir. of Revenue*,
    961 S.W.2d 44 (Mo. 1998) .......................................................... 23

*State v. Young*,
    695 S.W.2d 882 (Mo. banc 1985) .......................................... 4, 52, 53

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................. 3, 45

*Trinity Lutheran Church of Columbia, Inc., v. Comer*,
    582 U.S. 449 (2017) ................................................................. 2, 39

*United States v. Evans*,
    690 F.3d 940 (8th Cir. 2012) ...................................................... 28

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000) .................................................................... 31

*Walker v. Bowersox*,
    526 F.3d 1186 (8th Cir. 2008) .................................................... 18

*Wong v. Minnesota Dep't of Hum. Servs.*,
    820 F.3d 922 (8th Cir. 2016) ............................................... 2, 25, 26

*Yellowbear v. Lampert*,
    741 F.3d 48 (10th Cir. 2014) .................................................. 30, 31

Statutes

28 U.S.C. 1291 ............................................................................. 1

28 U.S.C. 1331 ............................................................................. 1

28 U.S.C. 1343 ............................................................................. 1

28 U.S.C. 2201 ............................................................................. 1

28 U.S.C. 2202 ............................................................................. 1

34 U.S.C. 40102 ................................................................... 35, 37

42 U.S.C. 290dd-2 .................................................................... 54

42 U.S.C. 290ee-3 .................................................................... 54

§ 210.143, RSMo ................................................................ Passim

§ 210.258, RSMo .................................................................... 16

§ 210.493, RSMo ................................................................ Passim

§ 210.1250, RSMo ............................................................... 8, 10

§ 210.1253, RSMo ............................................................... 8, 51

§ 210.1263, RSMo ................................................................ Passim

§ 210.1268, RSMo .................................................... 10, 15, 42, 45

§ 210.1271, RSMo .................................................... 10, 42, 43, 44

§ 210.1274, RSMo .................................................................... 32

§ 210.1280, RSMo ............................................................... 15, 45

§ 210.1283, RSMo .................................................... 11, 20, 23, 35

§ 536.150, RSMo ............................................................... 14, 41

Rules

Fed. R. App. P. 32 ................................................................................. 56

Fed. R. Civ. P. 56 ................................................................................. 18

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. 1331, 1343, 2201 and 2202. It granted Defendant's motion for summary judgment and denied Plaintiff's motion for summary judgment on March 3, 2025. Plaintiff timely filed a notice of appeal on March 31, 2025. This Court has jurisdiction under 28 U.S.C. 1291.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.  Whether the district court erred in failing to hold that the RCFNA's employment screening and eligibility requirements violate CNSIMI's expressive association rights by denying its right to define its staff.

Authority:

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)

*Wong v. Minnesota Dep't of Hum. Servs*., 820 F.3d 922 (8th Cir. 2016)

*Heartland Acad. Cmty. Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005)


II.  Whether the district court erred in failing to hold that the RCFNA violates Plaintiff's procedural due process rights by disqualifying individuals without meaningful pre-deprivation or post-deprivation process.

Authority:

*Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007)

*Trinity Lutheran Church of Columbia, Inc., v. Comer*, 582 U.S. 449 (2017)


III.  Whether the district court erred in failing to hold that the RCFNA violates Plaintiff's procedural due process rights by providing for the removal of students from Heartland regardless of established standards.

Authority:

*Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984
   (E.D. Mo. 2004)

*Heartland Academy Community Church v. Waddle,* 427 F.3d 525
   (8th Cir. 2005)

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)


IV.    Whether the district court erred in failing to hold that the RCFNA

unconstitutionally deprives parents of the right to select their children's

school.

Authority:

*Pierce v. Society of Sisters,* 268 U.S. 510 (1925)

*Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984
   (E.D. Mo. 2004)

*Heartland Academy Community Church v. Waddle,* 427 F.3d 525
   (8th Cir. 2005)


V.    Whether the district court erred in failing to hold that the RCFNA violates

CNSIMI's right to religious autonomy by restricting who it can hire as

religious instructors.

Authority:

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*,
    565 U.S. 171 (2012)

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 140 S. Ct. 2049 (2020)

VI.     Whether the district court erred in holding that the RCFNA's definition of

"Residential Care Facility" excludes CNSIMI's adult recovery programs and

other ministries.

Authority:

*State v. Young*, 695 S.W.2d 882 (Mo. banc 1985)

## STATEMENT OF THE CASE

### A.    The Parties

Plaintiff CNS International Ministries, Inc. (CNSIMI), is a Missouri not-for-profit corporation located in the Eastern District of Missouri. App. 118, 120; R. Doc. 97 at 1, 3.[1]

Defendant Jessica Bax is Acting Director of the Missouri Department of Social Services (DSS).[2]

### B.    Heartland is an Intentional Community

CNSIMI's campus and community, called "Heartland," is an intentional community, which is one that is built around a specific interest or goal (similar to a religious order, a retirement community, or an artist colony). Heartland's goal is to help those with life-controlling issues through redemption, in the belief that Jesus Christ is the answer to every issue individuals face—including addiction, anger, broken homes, and financial crises. App. 120; R. Doc. 97 at 3.

Though separately incorporated, Heartland Community Church is the heart of the Heartland community. The "church" is about being a living community on a daily basis than it is about a group of people gathering at a single time. Therefore,

---

[1] The Joint Appendix has two volumes. Pages labeled App. 1-311 are in Volume 1, and pages labeled App. 312-492 are in Volume 2.

[2] https://governor.mo.gov/press-releases/archive/governor-elect-kehoe-announces-jessica-bax-director-missouri-department

the church is not mainly a building or a meeting; it is a community of believers living together in a particular location. App. 121; R. Doc. 97 at 4.

Heartland believes that making disciples is a community effort. Discipleship involves teaching, training and accountability. App. 121; R. Doc. 97 at 4. Individuals with difficulties need to walk alongside and interact with other imperfect people who are living healthy and productive lives. App. 121-22; R. Doc. 97 at 4-5.

To that end, Heartland operates recovery programs for troubled adults and children: Heartland Children and Youth Home ("HCYH," consisting of girls' and boys' recovery programs), Heartland Women's Recovery Program, and Heartland Men's Recovery Program. App. 118; R. Doc. 97 at 1. Since the mid-1990s, these programs have formed adults and children who have life-controlling addictions, attitudes, and behavioral problems in the lifesaving concepts of Christian living and personal responsibility. App. 119; R. Doc. 97 at 2. Because of the nature of addiction and recovery, many individuals in the recovery programs have criminal convictions or guilty pleas in their past, often involving drug-related offenses. App. 120; R. Doc. 97 at 3.

Heartland also includes a K-12 school, attended by children in the boys' and girls' recovery programs alongside children of staff and from the community, and

an accredited, residential college known as "Heartland Christian College." App. 118-19; R. Doc. 97 at 1-2.

There are currently seven children in the boys' and girls' programs at Heartland. In addition to studies, it is common for children who are old enough to engage in part-time work in operations run by Heartland's affiliates. App. 119; R. Doc. 97 at 2.

### C. Heartland is a Safe Community.

Children in the HCYH are supervised by carefully vetted staff. For more than 20 years, CNSIMI has required anyone applying for any position that involved contact with children to report criminal history and child abuse and neglect and sex offender information, and obtained background checks from Missouri's State Highway Patrol and Family Care Safety Registry, which contains information from many databases. CNSIMI scrutinizes all history but only automatically disqualifies those with sex offender status. App. 122; R. Doc. 97 at 5.

To Heartland's knowledge, there is no listing in Missouri's Central Registry for Abuse and Neglect resulting from any incident between an adult and a child in Heartland's recovery programs in the past 20 years, and no felony or misdemeanor convictions resulting from such interactions in the entire history of Heartland, going back to the mid-1990s. App. 122; R. Doc. 97 at 5.

### D.  The Residential Care Facility Notification Act

Missouri House Bills 557 and 560 took effect on July 14, 2021. Those bills "amend[ed] chapter 210, RSMo, by adding thereto sixteen new sections relating to the protection of children, with penalty provisions and an emergency clause." *See* The Residential Care Facility Notification Act ("RCFNA"), § 210.1250, RSMo, *et seq*. Related regulations went into effect on October 1, 2021.

### 1.  Definition of "residential care facility"

The RCFNA applies to any "residential care facility," which is "any place, facility, or home **operated by any person who receives children** who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with [care] for twenty-four (24) hours a day . . ." § 210.1253(6), RSMo (emphasis added); 13 CSR 35-71.015(1)(F) (defining license-exempt residential care facilities, or "LERCFs," identically in relevant part).

CNSIMI, which has broad operations beyond its LERCF, is a legal "person"[3] who "receives children" (in its children's homes and school) as set forth in the statute and regulation. Accordingly, the plain meaning of the RCFNA

---

[3] A "person" is "an individual, partnership, organization, association, or corporation." § 210.1253(5) RSMo.

8

defines all of the "place[s], facilit[ies], or home[s] **operated by CNSIMI**" as license-exempt residential care facilities ("LERCFs") subject to the new Missouri requirements. This includes, *inter alia*, CNSIMI's adult recovery programs.

## 2.    Compelled Notification Procedures

LERCFs are required by the new laws to make a host of notifications to the Department of Social Services, Children's Division. 13 CSR 35-71.300(4)(5)(D)(1)-(9). These include:

> 2. The LERCF shall identify the name of the director, owner, operator, all staff members, volunteers, and any individual eighteen years of age or older who resides at or on the property of the LERCF. The LERCF shall provide the name, street address, physical and electronic mailing addresses, and phone number of the director or director's designee who will serve as the point of contact between the division and the LERCF.
> …
>
> 8. Proof that medical records are maintained for each child.
>
> > A. The division will accept a written attestation, made under oath, subject to penalty of perjury, and executed by the director of the LERCF, that the LERCF actually maintains medical records for each child served by the LERCF according to the written policy of the LERCF, which shall be attached to the attestation.
>
> 9. Background Check completion/eligibility. The director of the LERCF, or his or her authorized designee, shall certify, under oath subject to the penalties of perjury that all individuals who are required to complete a background check have successfully completed the background checks and have been found eligible for employment or presence at the LERCF pursuant to section 210.493, RSMo and 13 CSR 35-71.015.

13 CSR 35-71.300(5)(D)(1)-(9).

Violation of these notification requirements is punished by, *inter alia*, "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children from the residential care facility . . ." § 210.1271(1), RSMo. There is no requirement in Section 210.1271(1) that notice and a hearing to Heartland or any ineligible member precede such injunctive relief. *See also* § 210.1268, RSMo.

### 3. Required Background Checks

The new laws require CNSIMI to conduct background checks, which trigger screening criteria, on:

> Officers, managers, contractors, volunteers with access to children, employees, and other support staff of residential care facilities subject to the notification requirements under sections 210.1250 to 210.1286; any person eighteen years of age or older who resides at or on the property of such residential care facility; any person who has unsupervised contact with a resident of such residential care facility; and owners of such residential care facilities who will have access to the facilities shall undergo background checks under section 210.493.

§ 210.1263, RSMo; *see also* § 210.493.3 (the same list but not including "officers," "managers," and "other support staff").

The required background checks are extensive, including:

> (1) A state and Federal Bureau of Investigation fingerprint check; and
>
> (2) A search of the National Sex Offender Registry; and
>
> (3) A search of the following registries, repositories, or databases in Missouri, the state where the applicant resides, and each state where such applicant resided during the preceding five years:

> (a) The state criminal registry or repository, with the use of
> fingerprints being required in the state where the applicant resides
> and optional in other states;
> (b) The state sex offender registry or repository;
> (c) The state family care safety registry; and
> (d) The state-based child abuse and neglect registry and database.

§ 210.493.4, RSMo.

Failure to complete a background check renders an individual "ineligible for employment, service or presence" at the facility. 13 CSR 35-71.015(4)(A); *cf.* § 210.493.10, RSMo. Section 210.1283, RSMo, also makes it a class B misdemeanor to knowingly fail to complete a background check required under Section 210.493, RSMo. In other words, it criminalizes any applicant's refusal to waive her privacy rights.

Based on the results of these searching background checks, the regulations impose screening criteria for "eligibility" to be present at a LERCF. An individual is "ineligible" for employment or presence at a LERCF if he or she:

(1) Refuses to consent to the background check as required by this section;

(2) Knowingly makes a materially false statement in connection with the background check as required by this section;

(3) Is registered, or is required to be registered, on a state sex offender registry or repository or the National Sex Offender Registry;

(4) Is listed as a perpetrator of child abuse or neglect under sections 210.109 to 210.183 or any other finding of child abuse or neglect based on any other state's registry or database; or

(5) Has pled guilty or nolo contendere to or been found guilty of [an extensive list of offenses including those involving children but also drug- and weapons-related offenses, plus burglary and arson and others].

§ 210.493, RSMo. The regulations provide CNSIMI no freedom to contest a finding of "ineligibility" on the basis of additional information, including an individual's personal reform or redemption.

### 4. Due Process Issues

### a. Claims of Abuse or Neglect

Section 210.143 addresses claims by the Children's Division of child abuse or neglect at LERCFs. The process is for "the children's division," "law enforcement," or a "prosecuting or circuit attorney" to petition the circuit court for an order directing a facility that is the subject of an investigation "to present the child at a place and time designated by the court to a children's division worker for an assessment of the child's health, safety, and well-being." § 210.143.1, RSMo.

The new law states that the court *shall* enter such an order if:

(1) The court determines that there is reasonable cause to believe that the child has been abused or neglected and the residential care facility does not voluntarily provide access to the child;

(2) The assessment is reasonably necessary for the completion of an investigation or the collection of evidence; and

(3) Doing so is in the best interest of the child.

§ 210.143.2, RSMo. The child can then be held for "assessment" for up to 72 hours. § 210.143.3, RSMo. The provisions include no due process provisions for the child, the facility, or the parents prior to the 72-hour detention.

If the child is held for assessment for more than 72 hours, there must be "a hearing with **attempted** notice to the facility and to the parents or guardian and with due process for all parties." § 210.143.3, RSMo (emphasis added). Only "attempted" notice is required, despite the fact that the statutory scheme gives the Children's Division contact information for virtually all leadership personnel at a facility.

If the court enters an order to produce the child, the court may expand the order to require production of other children in the care of the residential care facility if the court finds there is reasonable cause to believe that such children may have been abused or neglected. § 210.143.4, RSMo. The new law thus contemplates mass removals of students based on only a "reasonable belief" standard:

> The petition and order may be made on an *ex parte* basis if it is reasonable to believe that providing notice may place the child at risk for further abuse or neglect, if it is reasonable to believe that providing notice may cause the child to be removed from the state of Missouri or the jurisdiction of the court, or if it is reasonable to believe that evidence relevant to the investigation will be unavailable if the *ex parte* order is not entered.

§ 210.143.5, RSMo. *If* a facility happens to be served with "a subpoena, petition, or order," the process provides for response and expedited hearing. § 210.143.6, RSMo.

### b. Background Check Ineligibility

In the event the State finds an applicant ineligible for presence at CNSIMI's LERCF based on the results of a State-required background check, the State will not reveal to CNSIMI the basis for such judgment. § 210.493.10, RSMo. Individuals subject to ineligibility determinations and aggrieved facilities may seek an informal administrative review without the benefit of the rules of evidence. 13 CSR 35-71.015(12)(B)(5). Only individual applicants (not aggrieved facilities) can make a further appeal to the Administrative Hearings Unit, again, without benefit of the rules of evidence. 13 CSR 35-71.015(12) (B)8 and(C). Ultimately, applicants and aggrieved facilities can seek judicial review, but the standard is deferential toward the State. 13 CSR 35-71.015(12)(D); § 536.150, RSMo.

### E. CNSIMI's Association Rights are Already Burdened.

The State has already deemed two Heartland employees ineligible to work at its LERCF. App. 123; R. Doc. 97 at 6. Edward Sonnier has been a janitor at Heartland's K-12 school since 2015. A background check made pursuant to the new law reflected that, in 1994, he pled guilty in the Circuit Court of St. Louis to a disqualifying offense: unlawful use of a weapon. Solely because of this offense,

which occurred almost thirty years ago and had nothing to do with children, Mr. Sonnier has been deemed by the State ineligible to do janitorial work at Heartland's LERCF. *Id*.

Sara Morgan has been a lunchroom supervisor at Heartland's K-12 school since 2020. A background check made pursuant to the new law reflected that in 2011, Ms. Morgan pled guilty to a felony arson charge. Solely because of this offense, which occurred more than a decade ago and had nothing to do with children, Ms. Morgan has been deemed by the State ineligible to perform lunchroom supervision duties at Heartland's LERCF. *Id*.

Finally, Plaintiff applied for inclusion of its LERCF in the "compliance listing" on October 12, 2021 (as required in § 210.1280, RSMo) (see R. Doc. 76-2 at 16), but Defendant has not placed Plaintiff's LERCF in the "compliance listing." R. Doc. 89-1 at 1-6. The implication of Plaintiff's LERCF not being included in the "compliance listing" is that Defendant deems the LERCF non-compliant with the RCFNA. Such non-compliance makes Heartland's LERCF also subject to the shut-down proceedings described in Sections 210.1268 and 1271, RSMo. This "compliance listing" is a matter of public record and is designed to be utilized by the public to obtain information about the facilities and the "disposition of any substantiated child abuse or neglect reports at or related to the residential care facility." § 210.1280, RSMo.

## SUMMARY OF THE ARGUMENT

CNSIMI's Heartland campus is an intentional Christian community; it comprises multiple ministries dedicated to a specific interest or goal, similar to a religious order, a retirement community, or an artist colony. Heartland's particular mission is to communicate Jesus as the answer to every issue humans face, including addiction, anger, broken homes, and financial crises. Heartland's recovery programs promote healing in children and adults who have been bound by life-controlling addictions, attitudes, and behavioral problems, by formation in the concepts of Christian living and personal responsibility. Heartland's other ministries complement its recovery programs by providing community and/or employment to carefully selected partners in Heartland's mission, many of whom are themselves living out a path of recovery and redemption.

The RCFNA is a direct attack on Heartland's First Amendment right to expressive association. In order to define and implement its mission, Heartland has a constitutionally protected right to choose the members of its own community. This right is central to constitutionally protected religious autonomy and to a Christian expressive association's ability to pursue its designated mission; the State may not interfere with Heartland's right to define itself.[4]

---

[4] Until 2021, Missouri lawmakers deferred to these rights in Section 210.258, RSMo (still valid but contradicted by the challenged new regulations):

Nevertheless, on July 14, 2021, the RCFNA took effect, imposing various new background check, disclosure and eligibility provisions on "License-Exempt Residential Care Facilities" or "LERCFs"—a category that includes, at least,[5] the Heartland Children and Youth Home ("HCYH"). The laws purport to impose FBI background checks with automatic disqualification criteria on everyone even distantly associated with CNSIMI's LERCF, including "support staff" and

---

Nothing in sections 210.252 to 210.257 shall be construed to authorize the department of health and senior services or any other governmental entity:
. . .

(2)  To interfere with the selection, certification, minimal formal educational degree requirements, supervision or terms of employment of a facility's personnel;

(3)  To interfere with the selection of individuals sitting on any governing board of a child care facility;

(4)  To interfere with the selection of children enrolled in a child care facility
. . .

[5] The district court held that the RCFNA definition of "LERCF" applies only to Plaintiff's residential youth home, the HCYH. App. 454-55; R. Doc. 133 at 17-18. The Court rejected CNSIMI's argument that the text's plain meaning includes all of Heartland's ministries within the definition of "LERCF," even though the State has already used these requirements to disqualify members of Plaintiff's staff who serve outside the HCYH. *Id*.; *see infra* at 28. CNSIMI maintains on appeal that the district court's narrow interpretation, though immediately simplifying, is unsupported by the text and insufficiently clear to give potential LERCFs notice of whether they are subject to the statute's provisions. *See infra* at 52. Nevertheless, the remainder of CNSIMI's arguments on appeal proceed under the district court's holding below, as if only the HCYH qualifies as a LERCF on Heartland's property.

contractors, like accountants, lawyers and bus mechanics, who may have no presence at CNSIMI, let alone contact with children. § 210.1263, RSMo.

The State has already applied its new laws to exclude from Heartland's LERCF longstanding and valued members of its community who are both beneficiaries of and contributors to their redemptive mission: a janitor and a member of the kitchen staff. The State has also kept Heartland off its publicly available "compliance listing." This draconian, unjustified, and unconstitutional intervention cuts to the heart of Heartland's expressive mission. It also demonstrates that CNSIMI's concerns that the new statutes will be applied in a way that undermines its mission are far from hypothetical.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment de novo. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008). Summary judgment is appropriate only if, in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Gilkerson v. Nebraska Colocation Centers, LLC*, 859 F.3d 1115, 1118 (8th Cir. 2017).

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT THE RCFNA'S EMPLOYMENT SCREENING AND ELIGIBILITY REQUIREMENTS VIOLATE CNSIMI'S EXPRESSIVE ASSOCIATION RIGHTS BY DENYING ITS RIGHT TO DEFINE ITS STAFF.

The fundamental right to expressive association was first articulated in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958), where Justice Harlan wrote for the Court that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking on the close nexus between the freedoms of speech and assembly." *Id*. at 460; *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). "The reason we have extended First Amendment protection in this way is clear: The right to speak is often exercised most effectively by combining one's voice with the voices of others." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 68 (2006); *see also Roberts*, 468 U.S. at 633 (O'Connor, J., concurring) ("Protection of the association's right to define its membership derives from the recognition that the

formation of an expressive association is the creation of a voice, and the selection of members is the definition of that voice.").

### A. The RCFNA's Screening Background Check and Eligibility Requirements Disqualify Attorneys, Accountants and Other Contractors, Along With Others Never Have Unsupervised Access to Children.

The RCFNA's screening background check requirements burden CNSIMI's association rights by replacing CNSIMI's judgment about the membership of their expressive association with the State's. The statutorily defined purpose of each background check is to determine whether an individual is "eligible or ineligible for employment *or presence at* the residential care facility." § 210.493.10, RSMo (emphasis added). Failure to complete a background check makes an individual guilty of a Class B misdemeanor. § 210.1283, RSMo. CNSIMI must require background checks of members of the executive suite ("officers"), of mechanics that work on transportation vehicles and accountants and lawyers who serve offsite ("contractors"), as well as of any other "employees" and "support staff," such as someone who helps with payroll. §§ 210.493 & 210.1263, RSMo.

"Officers" of the LERCF, who are officers of CNSIMI, may or may not ever step near Heartland's LERCF. Similarly, contractors, who may simply "do work for or supply goods to" the boarding school, § 210.493, RSMo, may never be near the building itself. And, the burden on CNSIMI's operations of requiring simple contractors to undergo background checks is substantial, as it may be difficult to

find accountants, lawyers, consultants, and other contractors who are willing to submit to FBI background and fingerprint checks as a condition of taking CNSIMI on as a client.

Significantly, the district court did not disagree that requiring CNSIMI to conduct screening background checks of officers and contractors would violate CNSIMI's constitutional rights. Instead, the district court took great pains to interpret the background check requirements narrowly, to avoid the unconstitutional burden. However, the court's narrowing interpretation of the RCFNA is insupportable in two significant ways.

First, the district court noted that the statute includes two lists of those members of CNSIMI who are subject to screening background checks: Section 210.493, RSMo, which also lays out the details of the background checks, imposes them on a shorter list of individuals than a subsequent provision, Section 210.1263, RSMo, which has no purpose but to list those individuals who are subject to mandatory background checks under Section 210.493. The latter, longer list (in Section 210.1263) of subjects of background checks includes officers, managers and "other support staff," while the earlier section (Section 210.493) no longer does, due to amendments effected during the course of this litigation. App. 467; R. Doc. 133 at 30.

The court referred to this as a "conflict" between the two statutes, which it was therefore forced to resolve in favor of the recently amended Section 210.493, obviating Section 210.1263. *Id*. This allowed the court to sidestep the question whether Section 210.1263's requirement that CNSIMI screen its officers, managers and other support staff in fact unconstitutionally burdens CNSIMI's right to define its own the membership.

However, neither the State's mid-litigation amendment of Section 210.493 nor the Court's statutory analysis successfully, reliably cures the constitutional infirmity of the RCFNA's screening requirements. That is because Missouri courts insist on giving effect to the plain meaning of statutes. *See, e.g.*, *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. 2009) ("This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue."). The plain meaning of Section 210.1263 clearly and without ambiguity subjects "officers," "managers," and "other support staff" at LERCFs to the RCFNA's screening background checks under Section 210.493. § 210.1263, RSMo. Without some ambiguity in this plain meaning, the district court erred in resorting to canons of statutory construction. *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 902 (Mo. 2023), *reh'g denied* (Mar. 7, 2023) ("Because § 589.400.1(7) is not ambiguous, this Court must apply [it] according to its plain language.").

That the legislature intended for both provisions to have effect is further evident in the plain meaning of an additional provision. Section 210.1283, RSMo, refers to both Sections 210.493 and 210.1264, RSMo: "A person is guilty of a class B misdemeanor if such person subject to background check requirements knowingly fails to complete a background check, as described under sections 210.493 and 210.1263."

To hold that the plain meaning of Section 210.1263 should be disregarded in favor of implementing only Section 210.493, the District Court erroneously held that the fact that the two provisions partially overlapped revealed a conflict between them. This is erroneous, because the two statutes in no way conflict with one another; one is simply broader than the other. *Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420, 422 (2022) (statutes "do not conflict just because one is broader than the other"); *St. Charles Cnty. v. Dir. of Revenue*, 961 S.W.2d 44, 47 (Mo. 1998) ("[R]epeal by implication is disfavored, and if two statutes can be reconciled then both should be given effect."). If Section 210.493, RSMo, had been amended to say that "*only* contractors, volunteers with access to children, and employee . . ." were to undergo background checks, it would conflict with Section 210.1263, RSMo, which also provides for screenings of officers,

managers and support staff. Instead, since the plain meaning of both statutes can be applied, they must both be applied.[6]

The second way the district court narrowed the scope of the RCFNA to avoid unconstitutional implications was by holding that only "contractors" "with access to children" are subject to background checks and involuntary screening. This interpretation is directly contradicted by the plain meaning of the text of both Sections 210.493 and 210.1263, RSMo. Both of those provisions require "contractors" generally to undergo background checks. Section 210.493(1)(2) defines a "contractor" as someone who "contracts to do work for or supply goods to" a LERCF. So, the plain meaning of the RCFNA is that attorneys or accountants who "do work for" CNSIMI are required to undergo background checks. *See* §§ 210.493(1)(2), 210.1263, RSMo. So, too, are mechanics who fix CNSIMI's vehicles and food suppliers. *Id.*

In order to hold nevertheless that "[c]ontractors, volunteers with access to children, and employees . . ." in the RCFNA means that *only* contractors *with*

---

[6] The district court also misinterpreted the fact that Section 210.493 was amended more recently than Section 210.1263. Quite contrary to the district court's conclusion, the Missouri Supreme Court has held that the legislature's failure to amend a statutory provision when it amended others supports a conclusion that the legislature intended for that provision's plain meaning to remain in effect. *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 901 (Mo. 2023), *reh'g denied* (Mar. 7, 2023) ("The General Assembly was aware of this Court's interpretation of § 589.400.1(7) at the time of the 2018 amendments and chose to leave the language regarding federal registration unchanged.").

*access to children* are subject to background checks, the district court relies on the "series qualifier canon," citing cases from the Supreme Court and the Eighth Circuit in a footnote. App. 467; R. Doc. 133 at 30. The plain meaning of the statute and both cases the district court relies on contradict its conclusion.

As the Supreme Court and this Court have made clear over and over, including in *Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 928-29 (8th Cir. 2016), relied on by the district court, canons of statutory construction serve to resolve ambiguity only where the plain meaning of the text is not clear. Here, the plain and separate meanings of "contractors" and of "volunteers with access to children" are apparent from the grammar, the punctuation, and the definitions included in the statute. § 210.493, RSMo. So, no canon of statutory construction is necessary.

However, were a canon of statutory construction necessary to resolve ambiguity or confirm the plain meaning of the texts here, the district court's application of the "series qualifier canon" is wrong here for the precise reason it was rejected by the Eighth Circuit in the very sentence in *Wong* the district court quotes. Specifically, the "series-qualifier canon," "generally applies when a modifier *precedes* or *follows* a list, not when the modifier appears in the middle." *Wong*, 820 F.3d at 928 (emphasis added and citations omitted) (quoted incompletely by the district court in its footnote 7, (App. 467; R. Doc. 133 at 30)).

Like the modifier in *Wong*, in the RCFNA, "with access to children," does not precede or follow a list; it appears in the middle. For a mid-list modifier, the Eighth Circuit rejected the series-qualifier canon in favor of "the last-antecedent canon of construction," which suggests that a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* (citations omitted). Applying its own decision in *Wong*, this Court should apply the last-antecedent canon in this case, which confirms the plain meaning of the text: that "with access to children" modifies only the last antecedent preceding it: volunteers. §§ 210.493 & 210.1263, RSMo.[7] [8]

---

[7] Nor does the Supreme Court's decision in *Flores-Figueroa v. U.S.*, 556 U.S. 646, 650 (2009), support the district court's interpretation. In fact, as it did with *Wong*, the district court does not accurately represent its holding. The Court in *Flores-Figueroa* did not, in fact, hold, or even consider, whether the adverb "knowingly" modified verbs in a series. The parties agreed that "knowingly" modified each one of a series of criminal actions; the case considered only whether the scienter requirement of "knowingly" extended beyond the verbs in the sentence to their object. *Id.* at 648 ("All parties agree that the provision applies only where the offender knows that he is transferring, possessing, or using *something*."). *Flores-Figueroa* also considers a modifier at the *beginning* of a phrase, not the middle, so it is doubly irrelevant to interpreting "contractors, volunteers with access to children, employees, [etc.]" in the RCFNA.

[8] A case relied upon elsewhere by the district court provides still another canon of construction that supports the plain meaning of the RCFNA. In 2009, the Missouri Supreme Court held that the plain meaning of a modifier that is set off by commas from the rest of a series is that it does *not* modify the remainder of the terms in that series. *See Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. 2009) (interpreting the phrase "bodily injury, sickness or disease," "[b]ecause the statute uses a comma to separate the phrase 'bodily injury' from the words that follow," the modifier "bodily" could not be read to modify the other terms in the series). Section 210.493's imposition of screening background checks on

"Contractors" of all kinds are still within the scope of the RCFNA's screening requirements.

In short, in an attempt to sidestep a constitutional question by interpreting the RCFNA narrowly to exclude "officers" and "contractors" from its background check provisions, the district court contradicts the plain meaning of the statute and misapplies United States Supreme Court, Eighth Circuit, and Missouri Supreme Court precedent. CNSIMI is entitled not just to one court's sympathetic, narrow and mistaken interpretation of the RCFNA, but to a constitutionally valid law.

## B. The RCFNA's Screening and Eligibility Requirements Burden Expressive Association.

The State's asserted right to declare individuals "ineligible" to be members of the Heartland community is an outright arrogation of CNSIMI's right as an expressive association to define its membership. Although expressive association claims often involve the right to *exclude* outsiders from the association, they can also involve claims to *include* those the State wants to bar from the association. *Heartland Acad. Cmty. Church v. Waddle,* 427 F.3d 525, 535 (8th Cir. 2005) (right to association violated when children illegally removed from school).

---

"[c]ontractors, volunteers with access to children, and employees . . ." "uses a comma to separate the phrase" "volunteers with access to children," from the words that precede and follow it. Therefore, under *Derousse*, the plain meaning of Section 210.493 is that "with access to children" does not modify the terms from which it is separated by commas, including "contractors."

The new laws apply the results of background checks to automatically, mechanistically determine whether a community member can remain at Heartland's LERCF, regardless of CNSIMI's judgment. They declare an individual "ineligible" to be at Heartland's LERCF if he or she refuses to consent to a background check, is registered in certain state registries, or has pled guilty to or been convicted of long list of crimes, including, for instance, "felony drug-related offenses." § 210.493, RSMo. Again, these individuals are ineligible to remain at Heartland's LERCF regardless of whether they have any unsupervised contact with children and, in many cases, on the basis of criminal offenses that have nothing to do with children.

The State has already exercised its new screening authority to exclude valued employees from Heartland's LERCF.[9] Edward Sonnier has been a school janitor at Heartland since 2015, and he has now suddenly been deemed unfit by the

_____

[9] The district court dismissed CNSIMI's arguments related to Mr. Sonnier and Ms. Morgan as "based on hypothetical situations," because "[t]here is no evidence, however, that either of these employees appealed or intend to appeal the ineligibility determination, or that CNSIMI intends to file an appeal of their behalf." App. 488; R. Doc. 133 at 51. ECF 133 at 51. However, although Defendant did not raise the issue below, there *are* appeals pending. Mr. Sonnier filed his appeal on September 16, 2022 (case 22AC-CC05604 in Cole County, Missouri) and Ms. Morgan filed her appeal on September 22, 2022 (case 22AC-CC05831 in Cole County, Missouri). Federal courts may take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012); *see also Hart v. Commissioner*, 730 F.2d 1206, 1207-08 n.4 (8th Cir. 1984) (per curiam) (federal court may take judicial notice of proceedings in other courts that directly affect matter at issue).

State for employment at the LERCF because in 1994 he pled guilty in the Circuit Court of St. Louis to a disqualifying offense: unlawful use of a weapon. App. 123; R. Doc. 97 at 6. Sara Morgan has been a lunchroom supervisor at Heartland since 2020, and she has now suddenly been deemed unfit by the State for employment at Heartland's LERCF because she pled guilty in 2011 to a felony arson charge. *Id*. Both of these offenses are over a decade old and have nothing to do with children. Moreover, neither employee occupies a position that involves unsupervised contact with children. CNSIMI highly values these two individuals as fruitful contributors to its community, but the State's exclusion requirements have commandeered Heartland's right as an expressive association to determine its own membership.

The State's disclosure, background check, and screening requirements burden those seeking membership in the Heartland community and exclude from Heartland's LERCF people whose histories include problems that are irrelevant to child abuse or endangerment. Contrary to the district court's conclusion, these are significant burdens on CNSIMI's ability to associate freely, define its membership, and share a common commitment to education, recovery, and religious faith. They are therefore impermissible under the First Amendment.

### C. The Challenged Sections of the RCFNA Cannot Pass Strict Scrutiny.

CNSIMI's right as an expressive association to determine its own membership "may be overridden 'by regulations adopted to serve compelling state

interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)). Strict scrutiny is an exacting inquiry, such that "it is the rare case in which . . . a law survives strict scrutiny." *Burson v. Freeman,* 504 U.S. 191, 211 (1992).

Defendant has made no serious argument that the new laws can withstand strict scrutiny. Below, the State referred broadly to a "compelling interest in protecting children from abuse," R. Doc. 78 at 8, but abstract interests are not adequately "compelling." In concluding that strict scrutiny demands an inquiry "in light of the particular burden the government has placed on the particular claimant," then-Judge Gorsuch noted:

> The more abstract the level of inquiry, often the better the governmental interest will look. At some great height, after all, almost any state action might be said to touch on "one or another of the fundamental concerns of government: public health and safety, public peace and order, defense, revenue," and measuring a highly particularized and individual interest "directly against one of these rarified values inevitably makes the individual interest appear the less significant."

*Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014) (citations omitted). As the 10th Circuit found, the Supreme Court has rejected these broadly stated interests, finding that courts "must examine both sides of the ledger on the same case-specific level of generality: asking whether the **government's particular interest**

**in burdening this plaintiff's particular religious exercise** is justified in light of the record in this case." *Id*. (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)) (emphasis added). In other words, in order to exclude Heartland's chosen members, the State must identify a compelling interest in applying the new exclusion provisions *to Heartland*. This it cannot do.

The record clearly establishes that children in the Heartland Children and Youth Home are safe as a result of CNSIMI's thorough employee screening process, which already relies on background checks. App. 122; R. Doc. 97 at 6. Defendant can have no compelling interest in superimposing additional screening criteria on a vetting process that shows no sign of being underinclusive. The district court cited an interest in protecting children, generally, while failing to analyze, as required by Supreme Court precedent, how the RCFNA's new requirements affect and fit at Heartland.

The new laws fail the "narrow tailoring" prong of the strict scrutiny standard as well. The State bears the burden of demonstrating that there is no less restrictive alternative that would further its alleged interests. *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813 (2000)*.* "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Id.* "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the

evil it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal

citations omitted).

The challenged laws make no attempt at narrow tailoring, instead applying

bluntly such that they, for instance, would categorically bar someone from

handling payroll for Heartland's LERCF if he or she had pled guilty to unlawful

use of a weapon or arson, even thirty years ago. § 210.493.12(5) RSMo.[10] [11] How

---

[10] Arson, unlawful use of a weapon, robbery, and burglary are two of more than a dozen wrongdoings that automatically disqualify individuals from service to Heartland's LERCF. § 210.493.12(5), RSMo. Defendant must meet the narrow tailoring test as it applies to each of these barriers.

Weighing against the lack of connection between these crimes and any compelling state interest, Heartland's mission of recovery and redemption is substantially undermined by automatic exclusion from its community, or any part thereof, of individuals who need redemption or whose lives show its fruits.

Taking a step back, it behooves Plaintiff to state the obvious: four of the major founders of the Christian religion would be prohibited from being an officer, an employee, staff, contractor or, for that matter, a resident on the premises of the LERCF under this statutory and regulatory regime. Abraham—recognized as the Father of the Faith in Judaism, Christianity and Islam—would be disqualified as a child abuser (Genesis 22); Moses, the Lawgiver, would be disqualified as a murderer (Exodus 2:11-15); David, King of Israel, would likewise be disqualified (II Samuel 11:14-26, 12:1-23); as well as the Apostle Paul (Acts 7:58-60, 8:1-3, 9:1-2, 22:3-4, 26:9-11).

The Plaintiff's multifaceted ministries exist as "a hospital for sinners." Despite the statutory regime's avowal otherwise, the RCFNA, by excluding the redeemed from Heartland's LERCF regardless of Heartland's own judgment, *does* "regulate or attempt to regulate, control, or influence the form, manner, or content of the religious curriculum, program, or ministry of a school or of a facility sponsored by a church or religious organization." § 210.1274, RSMo. Plaintiff's ministry is redemption.

[11] That the convictions in Section 210.493.12 can be from decades ago is another

does this protect children? How does it protect children to make offsite lawyers and accountants serving CNSIMI undergo FBI background checks? A narrowly tailored law abridging the freedom of an expressive association would at least avoid absurd applications. *See Riley v. National Federation of Blind of N. C., Inc.,* 487 U.S. 781, 801 (1988) ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." (internal quotations and citations omitted)).

The new law is overinclusive in at least two major ways. First, the list of automatically disqualifying crimes in Section 210.493.12, RSMo, is overinclusive, covering matters unrelated to childcare and offenses that are in the distant past. Second, the list of individuals subject to screening by the State is overinclusive, including individuals who have no involvement in childcare. These are massive failures by the statute to meet either the compelling state interest prong or the least restrictive means prong of strict scrutiny, in addition to failing to comply with other constitutional and legal requirements.

If the State were to (1) identify a legitimate compelling interest specific to Heartland (which it has not even tried to do) and (2) pursue it without excessively burdening Heartland's freedoms as an expressive association and its right to

---

clear strike against the statute. Individuals can change, and CNSIMI should be allowed to make that assessment.

religious autonomy (discussed *infra*), the resulting regulation would employ a least restrictive means requiring LERCFs to make and document individualized determinations, considering background factors among others, that each proposed employee who will have unsupervised contact with children poses no known danger to them. Mechanically banning individuals from inclusion in CNSIMI based on factors that have nothing to do with children will never satisfy strict scrutiny.

## II. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT THE RCFNA VIOLATES PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS BY DISQUALIFYING INDIVIDUALS WITHOUT MEANINGFUL PRE-DEPRIVATION OR POST-DEPRIVATION PROCESS.

The RCFNA's mandatory background check and screening process is also infirm because it does not satisfy procedural due process requirements in several respects. First, the RCFNA excludes individuals from Heartland's LERCF relying on sources of background information that do not themselves satisfy due process and do not allow affected individuals or associations to contest or challenge such information prior to their exclusion from Heartland's LERCF. Compounding this defect, the RCFNA does not provide for adequate post-deprivation review of exclusion decisions.

### A. RCFNA's Exclusion Determinations Do Not Provide Due Process.

As laid out *supra*, Section 210.493, RSMo, requires a "background check,"

including a "Federal Bureau of Investigation fingerprint check," for those involved with the LERCF at Heartland, including some distant individuals like "officers" and "contractors," and regardless of whether they have contact with the children at Heartland's youth homes. *See also* § 210.1263, RSMo; *compare* 34 U.S.C. 40102 (a "background check [is] for the purpose of determining whether a covered individual has been convicted of a crime that bears upon the covered individual's fitness *to have responsibility for the safety and well-being of children*") (emphasis added).

Pursuant to Section 210.493.10, RSMo, an individual is determined to be "eligible or ineligible for employment or presence at the licensed residential care facility" based upon these background checks alone. Failure to successfully complete a background check renders an individual "ineligible for employment or service" at the facility. 13 CSR 35-71.015(4)(A); *cf.* § 210.493.12(1), RSMo. Section 210.1283, RSMo, also makes it a class B misdemeanor to knowingly fail to complete a background check as required under Sections 210.493 and 210.1263, RSMo. In other words, it criminalizes individuals for not waiving their privacy rights.

Missouri allows an individual to appeal a disqualification based on a background check after-the-fact, but, notably, the individual "shall not be [given] an opportunity to collaterally attack or re-litigate the validity of the underlying plea

of guilt, plea of nolo contendere, or the underlying finding of child abuse, neglect or maltreatment . . ." 13 CSR 35-71.015(12)(C)(8).

Federal law, on the other hand, requires due process regarding FBI background checks, including the ability to correct a record:

> The officials making the determination of suitability for licensing or employment shall provide the applicants the opportunity to complete, or challenge the accuracy of, the information contained in the FBI identification record. . . . **Officials making such determinations should not deny the license or employment based on information in the record until the applicant has been afforded a reasonable time to correct or complete the record, or has declined to do so.**

28 CFR 50.12 (emphasis added).

Thus, under federal law an individual can collaterally attack what is in the database and cannot be told that he or she is ineligible for employment until that right has been exhausted. The individual must be afforded pre-deprivation due process. Under the RCFNA, he or she is specifically deprived of employment and pre-deprivation due process on the basis of the same information. The RCFNA therefore fails to afford to Heartland and its members the due process recognized by federal law.

CNSIMI alleges that due process requires what has been incorporated into federal background check law, which supersedes the contrary state law that Missouri has set forth. U.S. Const. Art. VI, cl. 2. The availability of appeals after disqualification does not prevent the new statute and regulations from immediately

and categorically disqualifying candidates from Heartland's hiring processes, which places a prior restraint on its freedom of association. Federal law, by contrast, takes care not to impede the hiring process prior to the operation of due process. 28 CFR 50.12.

In defense of the RCFNA, Defendant below argued that "before fingerprinting, applicants for background checks required by Section 210.493, RSMo, are given written information about how to challenge the accuracy or completeness of their FBI criminal history record, either by contacting the FBI directly, or by sending a challenge 'to the agency that contributed the questioned information to the FBI.'" R. Doc. 103 at 14. However, Missouri background checks do not rely solely on the FBI; they also search the National Crime Information Center's National Sex Offender Registry and state databases and registries in Missouri and other states. § 210.493.4, RSMo. Even if an FBI background check can be corrected, due process for disqualifying items revealed in the other searches remains lacking. The RCFNA's defect is that it lacks procedural due process prior to deprivation based on findings from any third-party source of background information. The FBI context shows what is required prior to adverse use of information from any of these sources.[12]

---

[12] Some of these requirements also flatly violate federal law. On October 20, 2021, Plaintiff's General Counsel, David Melton, wrote to the Missouri State Highway Patrol, explaining in detail how the new Missouri law required that unlawful

## B. RCFNA's Post-Deprivation Appeal Provisions are Also Insufficient.

At the outset, any appeal is hindered by the fact that the law prohibits notice to the facility of what renders an individual ineligible: "The department shall not reveal to the residential care facility or the child placing agency any disqualifying offense or other related information regarding the applicant." § 210.493.10, RSMo. But a facility like Heartland cannot meaningfully review or appeal an ineligibility finding without knowing the reasons behind it.

Even where grounds are known, individuals may be ineligible to associate with or remain at Heartland even if their names have been placed on a central registry merely on the basis of probable cause or reasonable suspicion, regardless of whether they obtained a due process hearing, and regardless of whether they had *de novo* appeal rights in a court of law, all of which is contrary to the 14th Amendment to the U.S. Constitution. *Jamison v. Dept. of Soc. Servs.,* 218 S.W.3d 399 (Mo. 2007). The *Jamison* court did allow the Missouri DSS to retain information based on probable cause, but only for its own internal purposes, and not for dissemination, because dissemination would interfere with liberty interests

---

requests be made of the FBI for information from its database regarding individuals present at or involved with Heartland. App. 262; R. Doc. 108 at 1. *See* 34 U.S.C. 40102 (severely restricting the persons about whom the FBI can provide information and the type of information it can provide). As it pertains to this case, that federal statute allows the FBI to provide information only with respect to whether child-care workers have been convicted of crimes bearing on their fitness to be child-care workers.

by potentially causing job losses. *Id.* at 412 n.14. Actually disqualifying individuals from employment on the unconstitutional grounds that they were listed on the basis merely of probable cause, as the new law requires, is worse than the mere dissemination prohibited by *Jamison.*

It appears that the State, when this case was well into litigation, attempted to address this flaw:

> (3) The children's division shall not use or disseminate a finding in the central registry to conduct a background check for employment with a third party or to find a person ineligible for employment with a third party or presence at a residential care facility or child placement agency, unless and until the finding is final and –
>
> > (A) the finding has been substantiated by court-adjudication, by at least a preponderance of the evidence standard;
> >
> > (B) the finding has been upheld by a preponderance of the evidence standard; . . .

13 CSR 35-31.100 (effective May 30, 2023).

But this new rule does not solve any problems. Fundamentally, all regulatory changes are inadequate because they cannot cure an illegal statute.[13] Moreover, the

---

[13] No regulation can provide Heartland or other LERCFs security that the illegal provisions of the new statutes will not be fully enforced in the future. That is precisely why courts have held that voluntary cessation of an illegal activity in response to a lawsuit cannot moot legal claims: the State may not change its ways voluntarily (and potentially temporarily) and protect illegal laws from judicial review. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 582 U.S. 449, 457 n.1 (2017) (Governor of Missouri could not moot a legal challenge to unconstitutional statute by ordering agency to avoid unconstitutional applications).

*statute* (§ 210.493, RSMo) is clear that if someone appears on another state's registry, irrespective of whether it complies with the requirements of due process under *Jamison*, he or she is ineligible for employment or presence at a LERCF.

The proposed new rule (as opposed to the statute) says nothing about registries in other states. The new rule refers only to "the central registry," presumably meaning Missouri's Family Care Safety Registry. So, regardless of this proposed rule, a person put on a registry in another state using a standard less than preponderance of the evidence will still be barred from employment at Heartland, in violation of *Jamison*.

Finally, the ineligibility determination and the appeal process themselves lack due process protections. 13 CSR 35-71.015(12)(B) explains the administrative review process leading to the exclusion of an individual from CNSIMI:

5. The Administrative Review process shall be informal. The rules of evidence shall not apply. There is no right to conduct discovery. There shall be no right to compel the production of witnesses or evidence by subpoena or otherwise.
...

8. The decision upon Administrative Review shall be the final decision of the Department as to any person that is not an applicant.

The regulations therefore explicitly deny anything resembling due process.

Nevertheless, burdened by this informality and the prohibition against disclosing to a facility the basis for a determination, an individual applicant (though not an aggrieved facility) can appeal administratively. This entails an

Administrative Review before the Administrative Hearings Unit of the Division of

Legal Services of the Department of Social Services. 13 CSR 35-71.015(12)(C).

Here, again, there are severe limitations on due process:

> The hearing is and **shall not be an opportunity to collaterally attack or re-litigate the validity of the underlying plea of guilt, plea of nolo contendere, or the underlying finding of child abuse, neglect or maltreatment** by the applicable state or local agency, or the accuracy of information in the federal, state or local registry or repository.

13 CSR 35-71.015(12)(C)(8) (emphasis added). Appeal hearings are "informal,"

and "**[t]he rules of evidence do not apply.**" 13 CSR 35-71.015(12)(C)(6)

(emphasis added).

Ultimately, applicants and facilities have access to only limited judicial

review:

> 1. Any applicant aggrieved by the final decision of the Department after appeal may seek judicial review as provided in section 536.150, RSMo.
>
> 2. Any person who is not an applicant who is aggrieved by the final decision of the Department after Administrative Review may seek judicial review as provided in section 536.150, RSMo.

13 CSR 35-71.015(12)(D). The judicial review is classified as *de novo*, but the

decision will be reversed only if "unconstitutional, unlawful, unreasonable,

arbitrary, or capricious or involves an abuse of discretion." § 536.150, RSMo.

In sum, the RCFNA violates procedural due process by providing for

excluding Heartland's members on the basis of illegal sources of information, then

providing no meaningful review. The district court erred in concluding otherwise.

## III. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT THE RCFNA VIOLATES PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS BY PROVIDING FOR THE REMOVAL OF STUDENTS FROM HEARTLAND REGARDLESS OF ESTABLISHED STANDARDS.

Violation of Missouri's new notification requirements is punishable by, *inter alia*, "injunctive relief to cease the operation of the residential care facility and provide for the appropriate removal of the children. . . ." § 210.1271.1, RSMo. There is no requirement that notice to and a hearing for CNSIMI or its members precede such injunctive relief. *See also* § 210.1268, RSMo.

Section 210.143, RSMo, governs claims of child abuse or neglect at LERCFs. State representatives may petition the circuit court for an order directing a facility to yield a child to a children's division worker for assessment lasting up to 72 hours. § 210.143, RSMo. No due process is provided for the child, CNSIMI, or parents prior to a 72-hour detention. If the child is held for assessment for more than 72 hours, there must be "a hearing with **attempted** notice to the facility and to the parents or guardian and with due process for all parties . . ." § 210.143.3, RSMo (emphasis added). Only "attempted" notice is required, even though the statutory scheme gives the State of Missouri contact information for virtually all leadership personnel at a facility.

The statutes grant further authority to remove students based only on an *ex parte* showing of "reasonable belief" that notice is ill advised. § 210.143.5, RSMo.

Only if a facility such as Heartland happens to be served with "a subpoena, petition, or order," do the new laws provide for some limited attempts at due process, § 210.143.6, RSMo, but it is unclear under what circumstances a facility would be served, given that *ex parte* applications are specifically permitted.[14]

None of these new provisions provides adequate due process for removing a child from Heartland, the standard for which was clearly articulated years ago by Judge Webber of the United States District Court for Eastern District of Missouri, after the State wrongfully removed 115 students from Heartland: the State must provide notice and a hearing prior to removing any child from Heartland unless there is reasonable cause to believe that that particular child is "in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1111 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005).

---

[14] It is true that in the case of *ex parte* applications a subsequent hearing is required under Section 210.1271.2, RSMo. But, again, only *attempted notice* of such a hearing to the parties, and not *actual notice*, is required. *Id*.

The State's attempt to institute a new statutory scheme falls well short of this clear due process standard, ignoring the directly applicable *Waddle* holding.[15][16]

Under the RCFNA, Heartland's LERCF is presently subject to being shut down simply for respectfully declining to provide Defendant with constitutionally and statutorily protected associational and private information. Defendant below ominously warned that "[b]ecause Plaintiff has not filed a LERCF notification containing all information required by law, Plaintiff does not have a protected property interest in continuing to operate its LERCF." R. Doc. 110 at 8.

Nevertheless, the district court found that CNSIMI does not have standing to challenge Section 210.1271's removal provision because CNSIMI does not face a sufficient threat of enforcement from the State. App. 485-86; R. Doc. 133 at 48-49. The district court dismissed not only the warning above, but also Heartland's history of conflict with the State, including an instance in which the State unlawfully removed Heartland students because of unfounded beliefs about abuse and neglect. *Id.*; *see Waddle,* 317 F. Supp. 2d 984.

---

[15] That Judge Webber's ruling did not specifically enjoin Missouri officials other than those described does not diminish the fact that constitutional requirements apply to all of them, including Defendant here.

[16] For instance, the RCFNA authorizes *ex parte* removal proceedings "if it is reasonable to believe that providing notice may place the child at risk for further abuse or neglect." § 210.143.5, RSMo. This is overbroad, in that several forms of "neglect," such as educational neglect, *e.g.,* not providing the right kind of math or science curriculum, do not pose the exigent circumstances that would justify emergency *ex parte* proceedings under *Waddle*.

The district court also ignored that, although Plaintiff applied for inclusion of its LERCF in the Defendant's "compliance listing" on October 12, 2021 (as required in Section 210.1280, RSMo) (see R. Doc. 76-2 at 16), Defendant has not placed Plaintiff's LERCF in said "compliance listing." R. Doc. 89-1 at 1-6. The implication of this omission is that Defendant deems CNSIMI non-compliant with the RCFNA and is even now subject to the shut-down proceedings described in Sections 210.1268 and 210.1271, RSMo.

The "compliance listing" is also a matter of public record and is designed to be utilized by the public to obtain information about the facilities and the "disposition of any substantiated child abuse or neglect reports at or related to the residential care facility." § 210.1280, RSMo. Under the RCFNA, therefore, Heartland is already the subject of enforcement in the form of being omitted from the compliance list, and is currently susceptible to forced removal of residents without due process.

Given the clarity of the new laws' requirements, current non-compliance, ongoing enforcement, and no disavowal of enforcement by Defendant, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (citing absence of disavowal as support for a credible threat of enforcement), Plaintiff does not have to wait to protect its constitutional rights until it faces a state injunction suit or the total closure of CNSIMI's business. *MedImmune, Inc. v. Genentech, Inc*., 549

U.S. 118, 128-129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

Further, in cases where the challenged law is "recent and not moribund," like the laws at issue here, the standard for showing a credible threat of enforcement is "quite forgiving." *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301-02 (1979)). This is because a court presumes that a legislature enacts a statute with the intent that it be enforced. *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), as amended (June 23, 2021).[17] Thus, the district court erred in finding that CNSIMI lacked standing to challenge the RCFNA's unconstitutional child removal provisions, and this Court should declare those provisions unconstitutional.

## IV. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT THE RCFNA UNCONSTITUTIONALLY DEPRIVES PARENTS OF THE RIGHT TO SELECT THEIR CHILDREN'S SCHOOL.

The RCFNA violates parents' rights under *Pierce v. Society of Sisters,* 268 U.S. 510 (1925), to "direct the upbringing and education of children under their

---

[17] The Supreme Court "has applied [the principles in *Babbitt*] in a number of cases challenging criminal statutes . . . and in the civil context as well." *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (internal quotation marks and citations omitted).

control" by selecting schools that exemplify the values and principles they want their children to learn. *Id.* at 534-35. "[T]hose who nurture [a child] and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.* By interfering with the employment decisions of Plaintiff and threatening to remove students without due process, the RCFNA usurps the "right [and] high duty" of parents to select an educational program that prepares their children to live up to the obligations of the Christian faith.[18]

Like the challenged law in *Pierce*, the RCFNA both injures CNSIMI's LERCF (*i.e.*, being "threatened with destruction through . . . unwarranted compulsion", *id.* at 535) and violates the fundamental rights of parents and children (*i.e.*, "the right of parents to choose schools where their children will receive appropriate mental and religious training, the right of the child to influence the parents' choice . . . ," *id.* at 532).

Parents who put their children at a religious boarding school do not make that choice lightly. By purporting to establish a new, low standard for removals of children and the shutdown of their home, the new laws deprive parents of their right to procure for their children instruction that they think is important and that

---

[18] In *Pierce*, the Supreme Court held that the school had an interest in the parents' constitutionally protected activity, so the school had third-party as well as primary standing to challenge a state law requiring students to attend public school. *Pierce*, 268 U.S. at 530, 535-36.

they have selected. *See Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984, 1100-01 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005) (finding that the defendant "violated Plaintiffs' right to family integrity when he removed the children on October 30, 2001, without notice or an opportunity to be heard and in the absence of exigent circumstances").

Defendant below defended its asserted right to turn Heartland's troubled residential students out of their home as if such an action were insignificant, because Heartland "could still operate a day school and admit any pupils it chose." R. Doc. 110 at 11. This cold, bureaucratic shrug at the effect on families if Heartland's residential program were dissolved demonstrates perhaps better than any other element of this case why State officials cannot be permitted to judge the constitutionality of their own actions. It is blindingly callous to suggest that the (probably sudden) dissolution of troubled children's full-time home would be a minor inconvenience, barely cognizable as a legal deprivation, and that it apparently would primarily simply injure CNSIMI, rather than the children and their parents.

*Pierce* established in 1925 that parents, not bureaucrats, get to decide how and where their children wake up in the morning and spend their day, and any impediment to that right by the State must pass strict scrutiny, which it cannot do.

**V. THE DISTRICT COURT ERRED IN FAILING TO HOLD THAT THE RCFNA VIOLATES CNSIMI'S RIGHT TO RELIGIOUS AUTONOMY BY RESTRICTING WHO IT CAN HIRE AS RELIGIOUS INSTRUCTORS.**

Missouri's new laws purport to foreclose CNSIMI's ability to hire teachers, even religion teachers, who do not pass eligibility requirements established by Defendant. The State, under clear church autonomy precedent, cannot invade a religious entity's sphere of autonomy in such a way. The RCFNA's disqualification criteria are an outright burden on Heartland's "authority to select, supervise, and if necessary, remove a minister without interference by secular authorities." *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 140 S. Ct. 2049, 2060 (2020).

In *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, the Supreme Court recognized that the First Amendment Religion Clauses grant religious organizations broad authority to hire and fire "ministers" without government interference from employment discrimination laws. *See* 565 U.S. 171, 181-90 (2012). By imposing constraints on the employment decisions of religious employers, such as Heartland, the State's new laws subject Plaintiff to precisely the sort of government interference that *Hosanna-Tabor* forbids.

The *Hosanna-Tabor* Court declined to adopt a rigid formula for determining whether an employee qualifies as a "minister," but it did establish that it is a broad category, "not limited to the head of a religious congregation," *id.* at 190. That

49

category would undoubtedly encompass teachers in private schools, and especially teachers of religion. The dismissed teacher in *Hosanna-Tabor* was a "minister" because her "job duties reflected a role in conveying the Church's message and carrying out its mission." *Id*. at 191-92.[19]

*Hosanna-Tabor*'s conclusion is consistent with decades of case law recognizing that religious schools play a critical role in the transmission of religious faith and that the government should accordingly hesitate to interfere with their employment decisions. *See, e.g.*, *Little v. Wuerl*, 929 F.2d 944, 948 (3d Cir. 1991); *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 501, 504 (1979).

Many, if not all, of Heartland's school teachers qualify as "ministers" under *Hosanna-Tabor*. All its school employees have "job duties [that] reflect[] a role in conveying the Church's message and carrying out its mission." *Hosanna-Tabor*, 565 U.S. at 192. Like the teacher in *Hosanna-Tabor*, the teachers at Heartland spend part of every workday performing duties related to inculcating religious faith in children. App. 123; R. Doc. 97 at 6.

The RCFNA and enabling regulations presume to determine who "is eligible or ineligible for employment or presence at the residential care facility,"

---

[19] *Hosanna-Tabor*'s progeny have applied the ministerial exception even more broadly. *See, e.g.*, *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012) (church music director considered to be minister); *Ginalski v. Diocese of Gary*, 2016 WL 7100558, *8 (Dec. 5, 2016) (school principal a minister despite "lack of evidence of involvement in religious activity").

§ 210.493.10, RSMo, based upon the results of invasive background checks. However, Plaintiff has the constitutional right to select its ministers despite anything that may show in background checks. The new statute and enabling regulations contain no exception, as required by *Hosanna-Tabor*, for the employment of ministerial employees, including teachers, house parents and the many other employees of Heartland who promote its religious message.

## VI. THE DISTRICT COURT ERRED IN HOLDING THAT THE RCFNA'S DEFINITION OF "RESIDENTIAL CARE FACILITY" EXCLUDES CNSIMI'S ADULT RECOVERY PROGRAMS AND OTHER MINISTRIES.

The RCFNA regulates any "residential care facility," which is "any place, facility, or home **operated by any person who receives children** who are not related to the operator and whose parent or guardian is not a resident of the same facility and that provides such children with [care] for twenty-four (24) hours a day . . ." § 210.1253(6), RSMo (emphasis added); 13 CSR 35-71.015(1)(F) (defining LERCFs identically in relevant part). CNSIMI, which has broad operations beyond its boarding school, is a legal "person"[20] who "receives children" (in its children's homes and school) in the manner set forth in the statute and regulation. Accordingly, the plain meaning of the RCFNA defines all of the "place[s], facilit[ies], or home[s] **operated by CNSIMI**" as "residential care

---

[20] A "person" is "an individual, partnership, organization, association, or corporation." § 210.1253(5) RSMo.

facilities" subject to the new Missouri requirements. This includes, *inter alia*, CNSIMI's adult recovery programs.

The district court dismissed this interpretation below, adopting another that narrows the scope of the RCFNA's definition of "residential care facility" to apply only to CNSIMI's residential home for children, HCYH. App. 454-55; R. Doc. 133 at 17-18. CNSIMI obviously welcomes a result that relieves them of many unconstitutional obligations and views the court's decision as a tacit acknowledgment that the broader interpretation would be constitutionally infirm. CNSIMI nevertheless renews on appeal its argument that the statute's definition of a "residential care facility" requires invalidation.

CNSIMI maintains its argument that the plain meaning of the RCFNA renders all of its ministries "LERCFs" subject to the new screening and disclosure provisions. However, even if the district court's interpretation of the RCFNA's definition of "residential care facility" represents another possible interpretation of the statute's inartful text, the statute is still susceptible to too many interpretations to render it valid. This is because the court's interpretation is not sufficiently plain from the text of the RCFNA to give individuals, the State, or courts interpreting the scope of its criminal penalties notice of their legal obligations. *State v. Young*, 695 S.W.2d 882, 886 (Mo. banc 1985) (The challenged provision "is not sufficiently clear to give reasonable notice of the prohibited conduct and to apprise enforcers of

the proper standards for enforcement. For this Court to convert the statute into a constitutional proscription would be to indulge in statutory revision, a matter within the exclusive province of the General Assembly.").

That the district court's interpretation is not clear or obvious is evident here by the fact that the Defendant's enforcement activity toward CNSIMI is consistent with CNSIMI's broader interpretation and inconsistent with the district court's. The two employees that have already been excluded from Heartland's LERCF are not employees at its youth homes, but instead work in CNSIMI's K-12 school. Even after the district court's holding, Defendant has not agreed to retract its adverse background check findings of these two employees, which are currently subject to appeal. *See supra* at 28-29. The district court's interpretation of the text, though legally binding on the parties to this lawsuit, is not so obvious, then, as to compel the Defendant to follow it in other courts, even against CNSIMI itself. Nor are future interpreting courts certain to follow the district court's holding, should it be raised before them, where Defendant can argue that it is contradicted by the plain text of a Missouri statute. The seriousness of this problem is amplified by the criminal penalties for non-compliance.

In sum, the RCFNA's definition of LERCF "is not sufficiently clear to give reasonable notice of the prohibited conduct and to apprise enforcers of the proper standards for enforcement." *State v. Young*, 695 S.W.2d at 886. Moreover, one of

the possible meanings of the text, the one currently being employed by Defendant even after the district court's judgment, raises a vast number of unconstitutional and otherwise illegal applications.[21] In this appeal, therefore, CNSIMI reasserts its argument that the text of the RCFNA's definition of LERCF must be invalidated and sent back to the General Assembly to revise in a way that provides clarity that only residential youth homes like HCYH are within its scope.

## CONCLUSION

For these reasons, the judgment of the district court should be reversed and judgment in favor of CNSIMI be entered on its motion for summary judgment.

June 30, 2025                    Respectfully submitted,

                              */s/ Timothy Belz*
                              Timothy Belz
                              J. Matthew Belz
                              CLAYTON PLAZA LAW GROUP, L.C.
                              112 South Hanley, Second Floor
                              St. Louis, Missouri 63105-3418
                              Phone: (314) 726-2800
                              Fax: (314) 863-3821
                              tbelz@olblaw.com
                              jmbelz@olblaw.com

                              *Counsel for Appellant CNS*
                              *International Ministries, Inc.*

---

[21] CNSIMI further renews on appeal its argument that, should the RCFNA be interpreted according to its plain text, the inclusion of all of CNSIMI's ministries in the definition of "LERCF" illegally requires that CNSIMI violate federal laws that prohibit them from revealing the identities of those in their recovery programs. 42 U.S.C. 290dd-2 and 42 U.S.C. 290ee-3.

# CERTIFICATE OF FILING AND SERVICE

I certify that on June 30, 2025, I electronically filed the foregoing brief and addendum with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. The brief and addendum were scanned for viruses using VirusTotal online. I also certify that after receipt of notice that the brief and addendum are filed, I will serve a paper copy of this brief on defendant-appellee by mailing him a copy at his address of record. I further certify that after receipt of notice that the brief and addendum are filed, I will transmit 10 paper copies of this brief and addendum to the Clerk of Court and 1 paper copy to the appellee.

*/s/ Timothy Belz*
Timothy Belz

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). The brief uses a proportional space, 14 point New Times Roman font. Based on a word count under Microsoft Word version 16.98, the brief contains 12,670 words, excluding cover page, the table of contents, table of authorities, any addendum, and certificates of counsel.

*/s/ Timothy Belz*
Timothy Belz