25-1634

_____

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT
_____

CNS INTERNATIONAL MINISTRIES, INC.,

*Plaintiff-Appellant,*

v.

JESSICA BAX, *in her official capacity as Acting Director of the Missouri Department of Social Services*,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Missouri, Hon. Henry E. Autrey

## APPELLANT'S REPLY BRIEF

Timothy Belz
J. Matthew Belz
CLAYTON PLAZA LAW GROUP, L.C.
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellant CNS International Ministries, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 3

    I.    The district court's narrowing construction of "Residential Care Facility" is textually unsupported and impermissible. ........................... 3

    II.    The ministerial exception and religious autonomy principles apply, and adopting narrowing interpretations to avoid applying them is error. ............................................................................................ 5

    III.    The RCFNA's background check regime burdens expressive association and fails strict scrutiny. ........................................................ 6

        A. The district court's misapplication of the series-qualifier canon is another improper narrowing. .............................................................. 6

        B. The State's argument that its amendment of Section 210.493 constituted a repeal of Section 210.1263 is based on a faulty premise. ..................................................................................... 8

        C. Strict scrutiny applies and is not satisfied. ........................................ 9

    IV.    The RCFNA violates procedural due process; litigation-stage narrowing does not fix it. ........................................................................ 10

    V.    The RCFNA interferes with parental rights, despite the State's narrow view of the legislation. ............................................................... 11

CONCLUSION ................................................................................................... 12

CERTIFICATE OF FILING AND SERVICE ...................................................... 14

CERTIFICATE OF COMPLIANCE ..................................................................... 14

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Barnhart v. Thomas*,
   540 U.S. 20 (2003) ............................................................................................. 7

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000) ........................................................................................... 9

*County of Jefferson v. Quiktrip Corp.*,
   912 S.W.2d 487 (Mo. 1995) ............................................................................... 8

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ........................................................................................... 1

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167 (2000) ......................................................................................... 10

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ........................................................................................... 9

*Heartland Academy Community Church v. Waddle*,
   317 F. Supp. 2d 984 (E.D. Mo. 2004) ............................................................. 12

*Heartland Academy Community Church v. Waddle*,
   427 F.3d 525 (8th Cir. 2005) ............................................................................ 12

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
   565 U.S. 171 (2012) ........................................................................................... 5

*Kedroff v. St. Nicholas Cathedral*,
   344 U.S. 94 (1952) ............................................................................................. 5

*Layson v. Jackson County*,
   290 S.W.2d 109 (1956) ...................................................................................... 8

*Osborne v. Ohio*,
   495 U.S. 103 (1990) ........................................................................................... 1

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
 140 S. Ct. 2049 (2020) ................................................................................ 5

*Reno v. American Civil Liberties Union*,
 521 U.S. 844 (1997) ................................................................................... 1

*State ex rel. City of Jennings v. Riley*,
 236 S.W.3d 630 (Mo. banc 2007) ............................................................. 9

*Trinity Lutheran Church of Columbia, Inc., v. Comer*,
 582 U.S. 449 (2017) ............................................................................ 2, 10

*United States v. Stevens*,
 559 U.S. 460 (2010) ................................................................................... 1

*United States v. Treasury Employees,*
 513 U. S. 454 (1995) ................................................................................. 1

*United States v. W. T. Grant Co.*,
 345 U.S. 629 (1953) ................................................................................... 2

*Virginia v. American Booksellers Assn., Inc.,*
 484 U.S. 383 (1988) ................................................................................... 1

*Wong v. Minnesota Dep't of Hum. Servs.*,
 820 F.3d 922 (8th Cir. 2016) ..................................................................... 6

Statutes

§ 210.493, RSMo ................................................................. 2, 7, 8, 9, 10

§ 210.1253, RSMo ..................................................................................... 3

§ 210.1263, RSMo ................................................................................ 8, 9

§ 210.1268, RSMo ................................................................................... 11

§ 210.1271, RSMo ................................................................................... 11

§ 210.1280, RSMo ............................................................................................... 11

# INTRODUCTION

The State and the district court have rewritten, recharacterized, and narrowed the Residential Care Facility Notification Act ("RCFNA") and its implementing regulations in order to deny its true constitutional consequences. The State's post hoc narrowing interpretations—never found in the statutory text, never reflected in historical enforcement, and never applied before this litigation—do not cure the law's overbreadth. Worse, the district court adopted these narrowing constructions to "avoid serious constitutional doubts," even though courts may not "rewrite a . . . law to conform it to constitutional requirements." *United States v. Stevens*, 559 U.S. 460, 481 (2010). As the Court explained:

> Nor can we rely upon the canon of construction that "ambiguous statutory language [should] be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 516 (2009). "[T]his Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *Reno v. American Civil Liberties Union,* 521 U.S. 844, 884 (1997). We "'will not rewrite a . . . law to conform it to constitutional requirements,'" *id.,* at 884-885 (quoting *Virginia v. American Booksellers Assn., Inc.,* 484 U.S. 383, 397 (1988); omission in original), for doing so would constitute a "serious invasion of the legislative domain," *United States v. Treasury Employees,* 513 U. S. 454, 479, n. 26 (1995), and sharply diminish Congress's "incentive to draft a narrowly tailored law in the first place," *Osborne,* 495 U.S., at 121. To read § 48 as the Government desires requires rewriting, not just reinterpretation.

*Id.* This theme pervades the case. The State now insists that the RCFNA applies only to the boys' and girls' residential homes; that the phrase "with access to children" silently modifies "contractors"; that various mandatory exclusions are

1

discretionary; and that sweeping disclosure and background-check requirements do not really apply as written. None of this matches the statutory or regulatory text. Nor can the Director's narrow interpretation or rewriting bind future directors of the Department of Social Services. A narrowing interpretation or rewriting offered by the State in litigation does nothing to protect CNS International Ministries, Inc. ("CNSIMI") from a future official with the desire to enforce the statute exactly as written—broadly, categorically, and unconstitutionally.

Critically, the statutory provisions and implementing regulations have been repeatedly amended and narrowed since CNSIMI filed suit in October 2021. These narrowing amendments—particularly to Section 210.493—confirm that the State itself recognized the infirmity of the original statute. This is classic "voluntary cessation," which does not moot a constitutional challenge, because, without a judicial rejection of the original regime, the State "is free to return to [its] old ways." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953); *see also Trinity Lutheran Church of Columbia, Inc., v. Comer*, 582 U.S. 449, 457 n.1 (2017).

While CNSIMI welcomes the current administration's limiting interpretations of the RCFNA throughout this litigation, future administrations may not be so accommodating. Statutory terms or issues that could be construed or rewritten in multiple ways stand to be weaponized unless struck down or defined by this Court.

2

For all these reasons, for those discussed below, and for those discussed in Plaintiff's opening brief, the district court's judgment should be reversed.

## ARGUMENT

### I. The district court's narrowing construction of "Residential Care Facility" is textually unsupported and impermissible.

The district court adopted a narrow reading of "residential care facility" to avoid constitutional problems.[1] But Section 210.1253(6) applies to "any place, facility, or home operated by any person who receives children . . ." CNSIMI "receives children" and operates various "place[s], facilit[ies] and home[s]." Nothing limits the statute's scope to buildings where children sleep.

The district court and the State construe further language in the statute—"that provides such children with"—to modify "place, facility, or home" and not "any person." The result of this interpretation is that only the group homes at CNSIMI are considered residential care facilities; the RCFNA's rules do not apply when children step outside of the homes to go to school, the gym, the playground, church or other daily activities. This interpretation protects CNSIMI in the near future, but it is not binding on future administrations, leaving CNSIMI at risk.

---

[1] The State acknowledges that it is calling for a "narrow construction" of the Missouri statutes at issue. Appellee Br. at 7, 14. The district court obliged, and in effect also rewrote portions of the statute.

3

CNSIMI wonders, given the State's and district court's narrow view of the statute, whether even CNSIMI's group homes constitute residential care facilities under the RCFNA. A "residential care facility" is "any place, facility, or home . . . that provides such children with supervision, care, lodging, and maintenance for twenty-four hours a day . . ." At CNSIMI, children living at the group homes do not receive 24 hours of care from the group homes—they go to the playground, gym, church, and other activities and, most pertinently, must attend the Heartland Christian Academy (a fictitious name of CNSIMI—the same "person" that operates the LERCF). The district court conclusion that the footprint of the group home alone is within the purview of the narrowed interpretation of "LERCF" and not the school (run by the same entity) means that the entire ministry is not a LERCF—including the group homes. The group homes lack the "for twenty-four hours a day" element, as will virtually all childcare facilities that send their children to school, public or private.

Because the State's narrow view is not required—and is not even supported—by the text, CNSIMI is entitled to relief from this Court from the ongoing threat that a future DSS director will enforce the statute as written.

## II. The ministerial exception and religious autonomy principles apply, and adopting narrowing interpretations to avoid applying them is error.

The State argues that the ministerial exception is irrelevant because excluded individuals—including Ed Sonnier and Sara Morgan—were not "teachers." But this again relies on an artificially narrow view of CNSIMI's ministry.

CNSIMI's intentional Christian community is structured so that virtually all adult members play a role in the redemptive mission of the ministry. The RCFNA's mechanism of excluding redeemed individuals does not effect merely a "secular" administrative adjustment; it changes the community's religious identity. The State's discretionary decision to treat only house parents as "ministers" is another gerrymander aimed solely at avoiding constitutional scrutiny.

Religious autonomy protects the right of a religious community to define itself—its membership, its moral standards, its structure, and its internal governance. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060, 2079 (2020); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952); *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012). The State's narrow view of who counts as "religious" at CNSIMI is inconsistent with CNSIMI's autonomy to determine the nature and importance of its members.

The State also alleges that "CNSIMI has not articulated an alleged injury to *itself* from putative reputational injuries from Sonnier and Morgan." Appellee Br. at 38 (emphasis in original). The State is missing the point; CNSIMI's injury is that it cannot serve and benefit from people such as Sonnier and Morgan, who need CNSIMI's redemption ministry and who are needed by CNSIMI's community. And CNSIMI's injury is live and current, as its name is not on the State's list of approved LERCFs.

### III. The RCFNA's background check regime burdens expressive association and fails strict scrutiny.

#### A. The district court's misapplication of the series-qualifier canon is another improper narrowing.

The district court ruled that the phrase "with access to children" in the phrase "[c]ontractors, volunteers with access to children, and employees . . ." modifies both "contractors" and "volunteers." App. 467; R. Doc. 133 at 30. This was wrong and is yet another example of torturing the RCFNA's text to avoid a constitutional dispute. A clear reading of the statute—with "contractors" unmodified—means that a LERCF's mechanics who work on transportation vehicles, its accountants and lawyers who serve offsite, and someone who helps with payroll will all have to undergo background checks.

Under *Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 928 (8th Cir. 2016), the series-qualifier canon does not apply when a modifier appears in the

6

middle of a list. The last-antecedent rule applies, and "with access to children" modifies only "volunteers." *See Barnhart v. Thomas,* 540 U.S. 20, 26 (2003) ("the grammatical 'rule of the last antecedent,' [states that] a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"). The district court's contrary holding rewrote the statute to reduce its reach.

And even this rewritten version may not bind future administrations. If Missouri elects a director who enforces the statute exactly as written, contractors with no child access will again be automatically excluded—renewing the constitutional injury. The State's voluntary narrowing of the RCFNA, in agreeing with the district court's assessment, therefore neither cures nor moots the expressive-association violation.

The State asks this Court to interpret Section 210.493.11, which states that a background-check applicant is either "eligible or ineligible for employment or presence at the" residential care facility, as imposing background check screening only on those "who will be present inside the LERCF." Appellee Br. at 36-37. The State is using a backwards form of logic adopted for this litigation only. The statute's background check requirements are imposed on the basis of categories (contractors, officers, volunteers, etc.) that have nothing to do with contact with the children served by the LERCF. They also exclude individuals based on categories

7

of offenses that have nothing to do with children (like a decades-old weapons charge). A constitutional statute would impose screening requirements not on the basis of broad categories, but only on individuals who have unsupervised access to children, and only on the basis of an official history that is related to the welfare of children.

### B. The State's argument that its amendment of Section 210.493 constituted a repeal of Section 210.1263 is based on a faulty premise.

The State relies on *County of Jefferson v. Quiktrip Corp.*, 912 S.W.2d 487, 490 (Mo. 1995), to argue that its amendment of Section 210.493, which (among other things) removed "officers," "managers," and "other support staff" from its background check requirements, constituted a repeal of Section 210.1263, even though Section 210.1263 still imposes background checks on those categories. The State's reliance on *County of Jefferson* is misplaced because that case applies only when two statutes are "repugnant"—meaning irreconcilably conflicting.

Here, there is no conflict. Section 210.1263 mandates background checks for officers, managers and support staff. Section 210.493, as amended, is simply silent as to those categories. Silence is not a prohibition. A facility can easily comply with both statutes by conducting the checks on all categories required by each. Furthermore, under the canon of *in pari materia*, this Court must harmonize the statutes. *Layson v. Jackson County*, 290 S.W.2d 109 (1956). The legislature's

8

amendment of the general statute (§ 210.493) while leaving the more specific statute (§ 210.1263) intact demonstrates a clear legislative intent. The legislature had every opportunity to amend Section 210.1263 when it amended Section 210.493, but it chose not to do so. Repeal by implication is "rare and disfavored," and should not be found here. *State ex rel. City of Jennings v. Riley,* 236 S.W.3d 630, 631 (Mo. banc 2007).

### C. Strict scrutiny applies and is not satisfied.

CNSIMI's right to define its religious community and expressive membership is core First Amendment activity. *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). The State's background-check and exclusion regime overrides CNSIMI's expressive choice to include redeemed individuals whose presence is essential to its religious and rehabilitative mission.

Missouri shows no compelling interest in excluding individuals who have criminal records of all vintages that have nothing to do with children. This is especially true with regard to CNSIMI and its mission of redemption. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (compelling governmental interest to be determined case by case, claimant by claimant, not at a higher level of generality).

The statutory scheme remains overbroad, and the State's post-litigation narrowing is voluntary cessation—not a permanent cure.

9

## IV. The RCFNA violates procedural due process; litigation-stage narrowing does not fix it.

The RCFNA's background check and screening process provides automatic exclusion—no notice, no hearing, no opportunity to challenge the allegations—followed by constrained review. Missouri has amended Section 210.493 and related rules several times since 2021, each time narrowing aspects of the regime. These amendments confirm the overbreadth of the initial statute and meet all the criteria of voluntary cessation. A state cannot moot a challenge merely by promising, during litigation, not to enforce a statute or narrowing it. *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 582 U.S. 449, 457 n.1 (2017); *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189 (2000) (case becomes moot because of cessation by state only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur").

The State also makes a contradictory standing argument related to CNSIMI's LERCF notification. Appellee Br. at 45-50. First, the State says that although "CNSIMI's LERCF notification was not 100% compliant with every detail of the RCFNA's requirements," it is "speculative" that "someone with statutory authority would seek an injunction for the LERCF to cease operations due to less-than-total compliance . . ." *Id*. at 45. CNSIMI is being paranoid, the State says. Yet five pages later, the State says that "[b]ecause CNSIMI has not

10

filed a notification containing all information required," "CNSIMI has no 'legitimate claim of entitlement to' continuing to operate its LERCF." *Id.* at 50. On the one hand, CNSIMI has nothing to worry about; on the other, without perfect compliance with the RCFNA, it has no right to exist.

Indeed, although CNSIMI applied for inclusion of its LERCF in the State's "compliance listing" on October 12, 2021 (as required in Section 210.1280, RSMo) (see R. Doc. 76-2 at 16), the State has not placed CNSIMI in said "compliance listing." R. Doc. 89-1 at 1-6. So, the State deems CNSIMI non-compliant with the RCFNA and subject to the shut-down proceedings described in Sections 210.1268 and 210.1271, RSMo.

The RCFNA's procedural infirmities continue to place CNSIMI in reasonable fear of enforcement by future administrators. Those infirmities also keep CNSIMI off the State's "compliance listing" available to the public, and, more particularly, to parents who have either already placed their children with CNSIMI, or those who might wish to. Not allowing CNSIMI on that list is a tacit threat of closure.

V. **The RCFNA interferes with parental rights, despite the State's narrow view of the legislation.**

Parents choose Heartland because of its redemptive community, its mentors, its moral framework, and the individuals who model transformation. They often find services and character at Heartland that they are unable to find anywhere else.

11

The State's voluntary (and potentially temporary) narrow interpretation of its enforcement authority under the RCFNA does not eliminate the burden on parents' rights imposed by the RCFNA's actual terms, which pose an ongoing threat to the availability of CNSIMI's school. Parents remain vulnerable to future enforcement of the statute's broad, literal terms, and no voluntary cessation for the purpose of this litigation will give parents any security. For the security the Constitution guarantees, parents need a definitive interpretation and invalidation of the RCFNA from this Court. The Heartland community (parents of students included) has been the victim of overzealous enforcement before, and this Court has the opportunity to ensure that it does not happen again with regard to the RCFNA. *Heartland Academy Community Church v. Waddle,* 317 F. Supp. 2d 984 (E.D. Mo. 2004), *aff'd, Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005).

## CONCLUSION

The State and the district court can defend the RCFNA only by narrowing and rewriting it, but their plastic surgery cannot cure a terminal disease. These narrowing constructions and rewriting of the statute are mere artifice: they conflict with the statute's plain text, cannot bind future officials, and constitute voluntary cessation rather than a true cure. The RCFNA's grave constitutional infirmities survive and entitle CNSIMI to relief from this Court.

The judgment of the district court should be reversed.

December 8, 2025

Respectfully submitted,

*/s/ Timothy Belz*
Timothy Belz
J. Matthew Belz
CLAYTON PLAZA LAW GROUP, L.C.
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Appellant CNS International Ministries, Inc.*

## CERTIFICATE OF FILING AND SERVICE

I certify that on this December 8, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service was accomplished by the CM/ECF system.

*/s/ Timothy Belz*
Timothy Belz

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). The brief uses a proportional space, 14 point New Times Roman font. Based on a word count under Microsoft Word version 16.98, the brief contains 2,733 words, excluding cover page, the table of contents, table of authorities, any addendum, and certificates of counsel.

*/s/ Timothy Belz*
Timothy Belz